## ROBERT L. ELLERY *vs.* MORLEY BUTTON MANUFACTURING COMPANY.

Suffolk.    November 21, 1916. — January 5, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Contract,* Construction.   *Invention.*

An inventor made with a corporation in whose employ he then was an agreement in writing providing for his employment at a certain salary and for the payment of a certain royalty per thousand on the product of his invention for three years; that at the end of the three years, if the corporation should "continue thereafter to employ" the inventor, he should be paid a stipulated sum per month as a royalty if the corporation should continue to produce at a profit any article manufactured from an invention of the inventor; that the inventor should not impart to others information harmful to the corporation, should assign to the corporation any inventions made by him during the three years and should remain in the employ of the corporation during the three years; and that, if he should at any time leave the employ of the corporation, "this agreement is to cease without notice from either party," and that it should "stand after said three years, so long as" the corporation "shall continue to employ" the inventor "and continue to manufacture articles invented by" him.   At the end of the three years, the corporation having stated previously that it would not continue the contract, the inventor left its employ and, later, after negotiations between the parties, a new contract was made under which the inventor was paid $10,000 as a retainer "as a consulting expert" and he was to be paid further sums for any special services he might render.   More than nine years later the inventor brought a suit in equity against the corporation for royalties alleged to have become due to him since the close of the three year term of the first contract.   *Held,* that the suit must be dismissed because from the express provisions of the contract and also from the conduct of the parties the first contract was terminated when the employment of the inventor ceased at the end of the three years, and that his retainer as a consulting expert was not continued employment under the first contract.

BILL IN EQUITY, filed in the Superior Court on April 29, 1915, for an accounting as to royalties alleged to be due to the plaintiff from the defendant under the provisions of an agreement between them dated January 27, 1903, and relating to employment of the plaintiff by the defendant and royalties to be paid to the plaintiff upon an invention called the "Perfection Nail."

The suit was referred to a master.

The master found that the contract in question was as follows:

"1.  The Morley Button Manufacturing Co. agrees to pay R. L.

Ellery for services a salary of $30.00 a week for three years from Jan. 1, 1903, and a royalty of 4 cts. per M on such Perfection Nails as it shall make and sell during a term of three years from January 1, 1903, guaranteeing that said royalty shall amount to $50.00 per month. The first payment of $50.00 to be made February 1st, and $50.00 the first of each month following during the period of three years above mentioned. Any royalty in excess of the $50.00 per month as provided for in the first part of this clause shall be paid quarterly as soon after receipt of R. L. Ellery's report of nails shipped and checking of same as convenient.

"2. At the end of three years from January 1, 1903, the Morley Button Manufacturing Company, if it shall continue thereafter to employ said Ellery, shall pay said Ellery a royalty of at least $50.00 per month, if it shall manufacture at a fair profit any article invented by R. L. Ellery. That is, if thereafter, the Perfection Nail should prove unsatisfactory or unprofitable and the Morley Button Company should manufacture at a profit any other article invented by Mr. Ellery, the Morley Co. shall continue to pay said Ellery $50.00 a month. It is understood that if the Perfection Nail does prove satisfactory, the royalty of 4 cts. is to continue with a guaranteed royalty of $50.00 per month. If royalties on Perfection Nails continue the amount of $50.00 or more all other articles shall be free from royalty.

"3. R. L. Ellery agrees to sever all connections with parties contemplating manufacturing Buttons, and agrees to impart no information in any way which might be detrimental to the Morley Button Manufacturing Co.

"4. R. L. Ellery agrees during said period of three years thereafter while this contract continues to assign to the Morley Button Manufacturing Co. any invention he may make which may be manufactured by the Morley Button Manufacturing Co. to advantage.

"5. R. L. Ellery agrees to remain with the Morley Button Manufacturing Co. on these terms for a period of at least three years. Should he at any time leave the employ of the Morley Button Manufacturing Co. this agreement is to cease without notice from either party. It is understood that this agreement shall stand after said three years, so long as the Morley Co. shall continue to employ R. L. Ellery and continue to manufacture articles invented by said Ellery.

"It is further agreed that in the event of the death or disability of R. L. Ellery during the three years from January 1, 1903, the Morley Button Manufacturing Co. shall pay to his family the royalty on Nails as mentioned in Clause 1. Dated at Portsmouth, Jan. 27, 1903."

The master further found as follows:

"About two months prior to January 1, 1906, the plaintiff and Merrill had a conversation, in which the former asked if the contract was to continue after the first of January and the latter replied that the defendant would not continue it, and the plaintiff then said that he 'should have to look around for something else to do.' He did not then ask Merrill to see a copy of the contract. On January 1, 1906, the plaintiff physically left the defendant's employ and never since has done any work for the defendant or performed any duties similar to those which he had been performing for a long time prior thereto. He then began to take measures to form a new corporation . . . for the purpose of competing with the defendant . . .

"As a result of . . . negotiations the parties, on February 19, 1906, executed the following instrument: 'The undersigned, R. L. Ellery of Portsmouth, New Hampshire, having been for many years in the employ of the undersigned Morley Button Manufacturing Company, a Maine corporation, and being desirous of getting out into a different line of business, and the company desiring to retain Mr. Ellery as a consulting expert in its business, in consideration of Ten Thousand Dollars ($10,000) paid to-day by the company to Mr. Ellery, receipt of which he acknowledges, he (R. L. Ellery) agrees that for a term of fifteen years from date, he will engage to hold for the benefit of the Morley Button Manufacturing Company his knowledge and experience of the business of manufacturing and selling shoe buttons, gaiter buttons, tufting buttons (including both shank and clinch tufting buttons of all kinds), washers, collar buttons, upholstery nails and ring travelers, and for the purpose of securing to the company the full benefit of the service intended to be covered by this retainer, he agrees that he will not directly or indirectly engage in or aid others to engage in any of the above named businesses in a manner that will be in any way detrimental to or conflict with the interests of the Morley Button Manufacturing Company. It is understood that future

services or consultations involving any appreciable amount of work which Mr. Ellery may actually perform for the company under this agreement shall be paid for by the company in addition to the sum of Ten Thousand Dollars ($10,000) already paid, at a rate to be satisfactory to Mr. Ellery, but to be named by him when possible in advance of his commencing to perform the special service, and it is also agreed that the company shall not have the right to demand that Mr. Ellery leave or neglect any outside business in which he may at the time be engaged for the purpose of consultations or performing service for the Company as provided in this agreement, but that such service may be rendered at such times as Mr. Ellery can arrange, so as not to conflict with his outside interests.'

"The sum of ten thousand dollars ($10,000) was paid by the defendant to the plaintiff on the date of the contract above set out; and such payment was intended and received as a retainer, and not in lieu of royalties, or in settlement of all claims. The various businesses which are mentioned in the above contract were all businesses in which the defendant was engaged at the time."

Other material facts found by the master are stated in the opinion. Exceptions by the plaintiff to the master's report were heard by *Fox*, J., by whose order an interlocutory decree overruling the exceptions and confirming the report and a final decree dismissing the bill with costs were entered. The plaintiff appealed.

*F. L. Simpson*, (*F. E. Knowles & L. Swig* with him,) for the plaintiff.

*N. W. Bingham, Jr.*, for the defendant.

DE COURCY, J. The plaintiff, who for years had been the foreman of the finishing department in the defendant's factory in 1902 invented a device called the "Perfection Nail" which was an improvement on an upholstering nail manufactured by the defendant. This invention he sold to the defendant in May, 1902, for a royalty aggregating $500, which was fully paid to him by October of that year. In January he took steps to start a company that would compete with the defendant, but, after a conference with one Merrill, the defendant's treasurer, he executed the written agreement dated January 27, 1903, on which the present suit for royalties is based.

It is the contention of the plaintiff that under this contract of 1903 he was entitled to royalties so long as the defendant continued to manufacture the "Perfection Nail" at a profit, regardless of whether he remained in its employ; or, if any physical service by him was essential, that there was in fact such continuous service as the contract required down to the filing of this bill.

The contract of 1903 was drawn up by the defendant's treasurer without legal advice, and its interpretation is not free from difficulty. There is force in the argument of the plaintiff, that what the contract contemplated was, to obtain the inventions which the plaintiff might make and to avoid his active competition. But by its terms it contemplated also his physical services. It recited that the defendant "is desirous that said R. L. Ellery shall remain in their employ." The royalty in excess of $50 per month was to be paid quarterly "as soon after receipt of R. L. Ellery's report of nails shipped and checking of same as convenient." Paragraph 5 expressly stipulated: "R. L. Ellery agrees to remain with the Morley Button Manufacturing Co. on these terms for a period of at least three years. Should he at any time leave the employ of the Morley Manufacturing Co. this agreement is to cease without notice from either party. It is understood that this agreement shall stand after said three years, so long as the Morley Co. shall continue to employ R. L. Ellery and continue to manufacture articles invented by said Ellery." From these and other provisions it seems plain, notwithstanding the ambiguity of one isolated clause in paragraph 2, that the agreement contemplated the employment of the plaintiff; and in fact he continued in such employ until January 1, 1906. All the royalties due for that period were paid to him.

One of the provisions of the second paragraph was: "At the end of three years from January 1, 1903, the Morley Button Manufacturing Company, if it shall continue thereafter to employ said Ellery, shall pay said Ellery a royalty of at least $50.00 per month, if it shall manufacture at a fair profit any article invented by R. L. Ellery." The master finds that on January 1, 1906, the plaintiff physically left the defendant's employ and never since has done any work for the defendant nor performed any duties similar to those which he had been performing. In January he started measures to form a new corporation; but after some negotiations with the

defendant's treasurer the parties executed the agreement of February 19, 1906. The 1906 agreement did not purport to continue the plaintiff in the defendant's employment. On the contrary it recited that, "having been for many years in the employ of" the defendant, he was "desirous of getting out into a different line of business." It seems quite apparent in the light of the circumstances that the main purpose of the retainer of $10,000 was to prevent competition by the plaintiff. His possible future services under the agreement were to be rendered only if and when they would not conflict with his outside business. If there were any doubt as to whether after the execution of the 1906 contract the defendant did "continue . . . to employ said Ellery" under the 1903 agreement, thereby entitling him to continuing royalties, the construction placed on the earlier agreement by the parties themselves, as manifested by their conduct, plainly was that the 1903 contract ended for all purposes after the term of three years. For more than nine years thereafter the plaintiff made no claim on the defendant for royalties and never asked for any report of the number of "Perfection Nails" which had been sold. During all this interval he was engaged in a business on his own account. The master has found that "At the time when the parties signed the agreement of 1906, both understood that there was no subsisting rights or liabilities under the agreement of 1903."

In view of our interpretation of the 1903 agreement, it is unnecessary to consider the defences of laches and the statute of limitations. The interlocutory decree confirming the master's report, and the final decree dismissing the plaintiff's bill, must be affirmed with costs; and it is

*So ordered.*